United States District Court
Southern District of Texas
**ENTERED**
February 03, 2021
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOSEPH MORRIS and MATTIE T. MORRIS, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. H-18-3026 |
| DEUTSCHE BANK NATIONAL TRUST COMPANY, NATIONAL ASSOCIATION, and OCWEN LOAN SERVICING, LLC, | § § § § | |
| Defendants. | § § | |

MEMORANDUM AND ORDER

Pending are the parties' cross-motions for summary judgment on all claims and counterclaims (Document Nos. 61 and 63).[1]  After carefully considering the motions, responses, reply, and applicable law, the Court concludes as follows.

I.  Background

Plaintiff Joseph Morris is an experienced homebuilder who has been involved in between 150 and 200 real estate transactions.[2]  He and his wife, Mattie Morris, owned a six-bedroom home at 621 Double

---

[1] Also pending is Defendant Deutsche Bank's Motion to Exclude Testimony by Plaintiffs' Expert Witness (Document No. 62).  Because Plaintiff Joseph Morris does not produce or rely on any testimony or report of Christopher Nooney in his summary judgment motion and response, and because Nooney's testimony would be irrelevant to what remains after summary judgment, the motion to exclude is DISMISSED without prejudice as moot.

[2] Document No. 61, ex. 15 at 12:8-19 (depo. of Joseph Morris).

Ridge Crossing in Missouri City, Texas.  On September 15, 2004, Mattie Morris executed a Texas Home Equity Fixed/Adjustable Rate Note in the amount of $584,000 in favor of Long Beach Mortgage Company to refinance the home in order to raise money to build other houses as part of Joseph Morris's businesses.[3]  To secure repayment of the loan, both of the Morrises contemporaneously executed a Texas Home Equity Security Instrument creating a first lien on their home.[4]  It is undisputed that this 2004 transaction complied in all respects with Article XVI, Section 50(a)(6) of the Texas Constitution and created a valid lien on the property.

In December 2005, Joseph Morris conveyed his interest in the home to Mattie Morris.[5]  The next month, on January 30, 2006, Mattie Morris again refinanced the property by executing an Adjustable Rate Note in the amount of $614,250 payable to PHM Financial Incorporated, d/b/a Professional Home Mortgage and a new Deed of Trust to secure repayment of the loan.[6]  The sum of $603,944.33 from the new loan proceeds was used to pay off the prior note secured by the 2004 mortgage.[7]  The 2006 Note and Deed

---

[3] Id., ex. 9; id., ex. 15 at 46:7-18.

[4] Id., ex. 8.

[5] Document No. 73, ex. 3.

[6] Document No. 61, exs. 1, 3.  Joseph Morris signed the 2006 Deed of Trust but not the note.

[7] Id., ex. 2 (January 30, 2006 final settlement statement); id., ex. 10 (Release of Lien); id., ex. 15 at 58:8-16.

of Trust were assigned multiple times over the following years: first to Indymac Federal Bank FSB on July 23, 2008; then to Onewest Bank FSB on August 13, 2009; and finally, on December 3, 2010, to Defendant Deutsche Bank National Trust Company, as Trustee of the IndyMac INDX Mortgage Loan Trust 2006-AR8 Mortgage Pass-Through Certificates, Series 2006-AR8 ("Deutsche Bank").[8]

Sometime in early 2010, the Morrises stopped making their obligatory loan payments.[9] As a result of the Morrises' default, a substitute trustee's sale was held on August 7, 2012, and Deutsche Bank purchased the property for $659,900.89.[10] The Morrises received a Notice to Vacate in August 2012 but did not leave the home.[11] In December 2012, Mattie Morris filed this suit in state court, seeking to invalidate the foreclosure sale.[12] The next month, however, Mattie Morris and Deutsche Bank, both represented by counsel, submitted an agreed judgment for possession, which was entered in state court on January 29, 2013, entitling Deutsche Bank to possession of the property and agreeing to the issuance of a writ of possession if the Morrises did not

---

[8] Id., exs. 4-6.

[9] Id., ex. 15 at 76:7-77:3.

[10] Id., ex. 7.

[11] Id., ex. 14 at 69:23-70:6 (depo. of Mattie Morris).

[12] Document No. 1-5 at 3 of 83 to 11 of 83 (Orig. Pet.).

vacate the property by March 15, 2013.[13]   A writ of possession was issued on March 22, 2013.[14]   That month, the Morrises finally moved out of the house and gave their keys to Deutsche Bank's counsel, but they left some of their personal property in the house.[15]

In May 2013, after obtaining new counsel (Plaintiffs' present counsel), Joseph and Mattie Morris together filed a First Amended Petition in Mattie Morris's state court lawsuit, alleging that the foreclosure sale had violated the Texas Constitution.[16]   That litigation took on a life of its own for five more years in state court before it was removed to this Court in August 2018.   During that time, in September 2016, Mattie Morris died.[17]   Mattie Morris's claims were subsequently dismissed because no party authorized to represent her estate timely moved for substitution.[18]

Plaintiff Joseph Morris's live pleading is his Eighth Amended Petition, which alleges claims against Deutsche Bank for

---

[13] Document No. 61, ex. 11.  The Agreed Judgment for Possession recited that "Mattie T. Morris and/or all other occupants ('Defendant') appeared through their counsel and announced that through submission of this Judgment for Possession, Defendants are not opposed to an award to Plaintiff of possession of the property."  Id., ex. 11 at 82 of 260.

[14] Id., ex. 12.

[15] Id., ex. 14 at 65:4-21; 69:19-22.

[16] Document No. 1-5 at 45 of 83 to 62 of 83 (1st Am. Pet.).

[17] See Document No. 1-32 at 24 of 24.

[18] Document No. 74.

(1) unlawful foreclosure because the lien did not fall into any category under § 50(a) of the Texas Constitution, (2) violation of Article XVI § 50(a)(6)(D) of the Texas Constitution, (3) wrongful foreclosure, (4) trespass, (5) conversion of personal property and theft, and (6) declaratory judgment.[19]  Deutsche Bank counterclaims for contractual and equitable subrogation, and in the event the Court sets aside the prior foreclosure sale, for foreclosure of the subrogated lien and a writ of possession.[20]

In August 2019 the Court stayed this case pending the Supreme Court of Texas's ruling on the Fifth Circuit's certified question whether a lender was entitled to equitable subrogation when it failed to correct a curable constitutional defect in the loan documents under § 50 of the Texas Constitution.[21]  Zepeda v. Fed. Home Loan Mortg. Corp., 935 F.3d 296, 301 (5th Cir. 2019).  The Supreme Court unanimously answered the certified question "yes," holding that "[u]nder Texas law, a lender who discharges a prior, valid lien on the borrower's homestead property is entitled to subrogation, even if the lender failed to correct a curable defect in the loan documents under § 50 of the Texas Constitution."  Fed.

---

[19] Document No. 1-37 at 14 of 25 to 24 of 25 (8th Am. Pet.).  Plaintiff's Eighth Amended Petition also named Ocwen Loan Servicing, LLC as a Defendant, but Plaintiff later voluntarily dismissed his claims against Ocwen.  Document No. 42.

[20] Document No. 1-31 at 55 of 56 to Document No. 1-32 at 5 of 24 (Orig. Countercl.).

[21] Document No. 56.

Home Loan Mortg. Corp. v. Zepeda, 601 S.W.3d 763, 769 (Tex. 2020).
Both parties now move for summary judgment on their respective
claims and counterclaims.

## II. Legal Standard

Rule 56(a) provides that "[t]he court shall grant summary
judgment if the movant shows that there is no genuine dispute as to
any material fact and the movant is entitled to judgment as a
matter of law." FED. R. CIV. P. 56(a). Once the movant carries
this burden, the burden shifts to the nonmovant to show that
summary judgment should not be granted. Morris v. Covan World Wide
Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998). A party opposing
a properly supported motion for summary judgment may not rest upon
mere allegations or denials in a pleading, and unsubstantiated
assertions that a fact issue exists will not suffice. Id. "[T]he
nonmoving party must set forth specific facts showing the existence
of a 'genuine' issue concerning every essential component of its
case." Id. "A party asserting that a fact cannot be or is
genuinely disputed must support the assertion by: (A) citing to
particular parts of materials in the record . . .; or (B) showing
that the materials cited do not establish the absence or presence
of a genuine dispute, or that an adverse party cannot produce
admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1).

"The court need consider only the cited materials, but it may consider other materials in the record." Id. 56(c)(3).

In considering a motion for summary judgment, the district court must view the evidence "through the prism of the substantive evidentiary burden." Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2513 (1986). All justifiable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986). "If the record, viewed in this light, could not lead a rational trier of fact to find" for the nonmovant, then summary judgment is proper. Kelley v. Price-Macemon, Inc., 992 F.2d 1408, 1413 (5th Cir. 1993). On the other hand, if "the fact finder could reasonably find in [the nonmovant's] favor, then summary judgment is improper." Id. Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that "the better course would be to proceed to a full trial." Anderson, 106 S. Ct. at 2513.

III. Analysis

A.   Equitable Subrogation

The Texas Constitution "lays out the terms and conditions a home-equity loan must include if the lender wishes to foreclose on a homestead following borrower default." Garofolo v. Ocwen Loan

7

Servicing, L.L.C., 497 S.W.3d 474, 475 (Tex. 2016).  It is undisputed that the 2006 Deed of Trust did not include all of the terms and conditions required by the Texas Constitution, Article XVI, § 50(a)(6) in order to permit Deutsche Bank to foreclose on the Morrises' home, and incorrectly stated that the loan was not a home equity loan governed by § 50(a)(6).[22]  Neither Deutsche Bank nor any of its predecessors-in-interest remedied any of the constitutional defects.  Deutsche Bank now concedes that its argument for contractual subrogation is foreclosed by Fifth Circuit precedent,[23] so whether Deutsche Bank was entitled to foreclose on the property depends on the availability of equitable subrogation.

As the Supreme Court of Texas explained in Zepeda, the doctrine of equitable subrogation "allows a lender who discharges a valid lien on the property of another to step into the prior lienholder's shoes and assume that lienholder's security interest in the property, even though the lender cannot foreclose on its own lien."  Zepeda, 601 S.W.3d at 766.  Equitable subrogation is available even where the lender knows its own lien is unconstitutional, including when the lender fails to correct a curable defect in the loan documents.  Id. at 767, 769.

_____

[22] Document No. 61, ex. 3 at 32 of 260.

[23] Document No. 61 at 12.  See Zepeda, 935 F.3d at 301 ("If contractual subrogation requires a valid deed of trust, which requires the loan to comply with constitutional provisions, and the loan does not comply, it follows that the deed of trust is invalid, and that precludes any contractual subrogation.").

The application of <u>Zepeda</u> to the undisputed facts in this case is straightforward. The uncontroverted summary judgment evidence establishes that of the $614,250 refinance loan made to Mattie Morris in 2006, $603,944.33--more than 98%--was used to pay off the prior note secured by the 2004 mortgage lien.[24] It is uncontroverted that the 2004 lien complied with the Texas Constitution and was otherwise valid. "Under Texas law, a lender who discharges a prior, valid lien on the borrower's homestead property is entitled to subrogation, even if the lender failed to correct a curable defect in the loan documents under § 50 of the Texas Constitution." <u>Id.</u> at 769. Thus, Deutsche Bank was entitled to equitable subrogation.

Plaintiff raises two principal arguments that equitable subrogation is unavailable to Deutsche Bank. First, he contends that Deutsche Bank's subrogation claim is barred by Texas's general four-year statute of limitations because Deutsche Bank did not file its counterclaim until November 2017, more than four years after the Morrises challenged the invalidity of the lien under § 50(a).[25] However, "Texas courts have long held that a cause of action for equitable subrogation does not accrue until the maturity date of a secured note." <u>Gillespie v. Ocwen Loan Servicing, LLC</u>, No. 4:14-CV-00279, 2015 WL 12582796, at *4 (S.D. Tex. Oct. 28, 2015)

---

[24] Document No. 61 ex. 2; <u>id.</u>, ex. 10; <u>id.</u>, ex. 15 at 58:8-16.

[25] Document No. 65 at 3-4.

9

(citing <u>Hays v. Spangenberg</u>, 94 S.W.2d 899, 902 (Tex. Civ. App.-Austin 1936); <u>Kone v. Harper</u>, 297 S.W. 294, 300 (Tex. Civ. App.-Waco 1927), *aff'd sub nom.* <u>Ward-Harrison Co. v. Kone</u>, 1 S.W.2d 857 (Tex. Comm'n App. 1928)); *accord* <u>De La Cruz v. Bank of New York</u>, No. A-17-CV-00163-SS, 2018 WL 3018179, at *6 (W.D. Tex. June 15, 2018) ("Limitations on equitable subrogation do not begin to run until the maturity date of the previous note, a date that has not passed.") (citing <u>Gillespie</u>, 2015 WL 12582796, at *4).  The 2004 note that was paid off by the proceeds of the 2006 loan had a maturity date of October 1, 2034.[26]  Thus, as in <u>Gillespie</u>, "[b]ecause the claim for equitable subrogation only accrues upon the maturity date of the note, it is not now barred by the statute of limitations." <u>Gillespie</u>, 2015 WL 12582796, at *4.

Plaintiff's second argument is that <u>Zepeda</u> entitles a lender only to *seek* equitable subrogation, and that a balancing of the equities shows that subrogation is not available here.[27]  Plaintiff misreads <u>Zepeda</u>.  The court unanimously held that a lender who discharges a prior valid lien "is entitled to subrogation." <u>Zepeda</u>, 601 S.W.3d at 769.  <u>Zepeda</u> simply does not permit consideration of the "equitable factors" Plaintiff asks the Court

---

[26] Document No. 61, ex. 8 at 61 of 260.

[27] Document No. 65 at 4-6.

to balance.[28]  <u>Id.</u> at 767 ("None of our subsequent § 50 decisions has considered any factor other than the lender's discharge of a prior, valid lien.  To the contrary, in this context, we have said that a lender's right to subrogation is 'fixed' when the prior, valid lien is discharged.") (citing <u>Benchmark Bank v. Crowder</u>, 919 S.W.2d 657, 660 (Tex. 1996)).  Plaintiff may disagree with the Supreme Court of Texas's subrogation jurisprudence on policy grounds, but its interpretation of Texas law on this subject was sought and accepted by the Fifth Circuit and is binding on this Court.

In sum, because Deutsche Bank's 2006 loan to Mattie Morris was used to pay in full the note secured by a prior valid lien, Deutsche Bank stood in the shoes of the prior lienholder and was entitled to foreclose on the Morrises' house under the doctrine of equitable subrogation.

---

[28] Moreover, Plaintiff's proposed "balancing of equities," <u>id.</u> at 19, ignores the primary inequity that equitable subrogation is intended to prevent:  "The purpose of the doctrine is to prevent the unjust enrichment of the debtor who owed the debt that is paid."  <u>Langston v. GMAC Mortg. Corp.</u>, 183 S.W.3d 479, 481 (Tex. App.-Eastland 2005, no pet.) (citing <u>First Nat. Bank of Kerrville v. O'Dell</u>, 856 S.W.2d 410, 415 (Tex. 1993)).  As Deutsche Bank points out, Plaintiff's arguments entirely disregard "that they borrowed $600,000 to refinance a valid prior lien and failed to repay it [and] . . . lived in the house for the better part of two years without making any mortgage or property-tax payments."  Document No. 66, at 1.

B.   <u>Plaintiff's Claims</u>

   1.   Constitutional Violations

   Plaintiff's first two causes of action allege violations of Article XVI, Section 50(a) of the Texas Constitution.[29]  Plaintiff in his summary judgment motion appears to abandon these claims, omitting them from his list of "current claims."[30]  Indeed, Deutsche Bank is entitled to summary judgment on these claims because the Texas Constitution does not create an independent cause of action for violations of § 50(a).  *See* <u>Garofolo</u>, 497 S.W.3d at 475 ("Our constitution lays out the terms and conditions a home-equity loan must include if the lender wishes to foreclose on a homestead following borrower default.  It does not, however, create a constitutional cause of action or remedy for a lender's subsequent breach of those terms or conditions.").

   2.   Wrongful Foreclosure

   To succeed on a claim for wrongful foreclosure under Texas law, a plaintiff must show "a defect in the foreclosure proceedings; a grossly inadequate foreclosure sale price for the . . . property; and a causal connection between the defect and the

---

   [29] Document No. 1-37 at 18 of 25 to 19 of 25.

   [30] *See* Document No. 63 at 5-6 (identifying "Plaintiff's current claims" as wrongful foreclosure, trespass, conversion of personal property, declaratory judgment, and attorney's fees).

inadequate price." <u>Water Dynamics, Ltd. v. HSBC Bank USA, Nat.
Ass'n</u>, 509 F. App'x 367, 368 (5th Cir. 2013) (citing <u>Sauceda v.
GMAC Mortg. Corp.</u>, 268 S.W.3d 135, 139 (Tex. App.-Corpus Christi
2008, no pet.)). For the second element, "Texas cases establish
that a foreclosure price exceeding 50% is not grossly inadequate."
<u>Id.</u> at 369 (citing <u>Terra XXI, Ltd. v. Harmon</u>, 279 S.W.3d 781, 788
(Tex. App.-Amarillo 2007, pet. denied); <u>Richardson v. Kent</u>, 47
S.W.2d 420, 425 (Tex. Civ. App.-Dallas 1932, no writ)).

Plaintiff contends that Defendant was not entitled to
equitable subrogation and that the foreclosure sale was invalid
because Deutsche Bank failed to obtain a court order before
foreclosing. For the reasons stated above, Deutsche Bank stood in
the shoes of the prior lienholder and was entitled to foreclosure
of the Morrises' home. Assuming *arguendo* that Deutsche Bank's
foreclosure suffered from a procedural defect, to maintain a
wrongful foreclosure claim Plaintiff must present evidence that the
defect was the cause of a grossly inadequate sales price being
received.

Plaintiff alleges that "[i]n August 2012, the value of
Plaintiff'[s] home was at least $885,000 to $902,000. Rather than
selling the property for its worth, Defendants sold the property
for a much lower value at only $659,900.89."[31] As summary judgment
evidence, Plaintiff produces two appraisal reports opining on the

---

[31] Document No. 1-37 at 20 of 25.

value of the Morrises' home on the date of the substitute trustee's sale, with one suggesting $885,000 and the other $860,000.[32]  Using the higher of these estimated market values, the foreclosure price was still more than 74% of that top possible value, far above the 50% threshold for a grossly inadequate sale price.

Plaintiff relies on Charter Nat. Bank-Hous. v. Stevens, 781 S.W.2d 368 (Tex. App.-Houston [14th Dist.] 1989, writ denied), to argue that the mortgagor does not *always* need to prove a grossly inadequate selling price to prevail on a wrongful foreclosure claim.[33]  Stevens, as observed by the Fifth Circuit, is an example of the narrow exception that may apply to the general rule when the mortgagee deliberately chills the bidding at a foreclosure sale. *See* Villarreal v. Wells Fargo Bank, N.A., 814 F.3d 763, 768 (5th Cir. 2016) ("The plaintiff must allege a grossly inadequate selling price in 'all but a specific category of cases' where the plaintiff alleges that the defendant deliberately chilled the bidding at the

---

[32] Document Nos. 63-7, 63-9.  Deutsche Bank disputes these estimates, noting that the Morrises unsuccessfully tried to sell their house for more than two years before the foreclosure sale and received only one offer, which was for less than $600,000. Document No. 64 at 21.  Deutsche Bank also produces an appraisal estimating that the property's market value was $750,000 on the date of the sale.  Document No. 61, ex. 19-1.  For purposes of determining whether Plaintiff has raised a genuine issue of material fact, however, the Court views the evidence in the light most favorable to Plaintiff.  Anderson, 106 S. Ct. at 2513 ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.").

[33] Document No. 63 at 9.

foreclosure sale." (citing <u>Stevens</u> among other cases)).  Here, of course, there is no allegation, much less summary judgment evidence, that Deutsche Bank did anything deliberately to chill the bidding at the substitute trustee's sale, and the <u>Stevens</u> exception is inapposite.  Thus, the general rule applies, as articulated by the Fifth Circuit in <u>Water Dynamics</u>: "[A] foreclosure price exceeding 50% is not grossly inadequate" under Texas law, such that "[t]his court is <u>Erie</u>-bound to follow uniform Texas law," affirming the dismissal of a wrongful foreclosure claim where the sale price was 52% of the appellants' proffered value.  <u>Water Dynamics</u>, 509 F. App'x at 369.  Because the uncontroverted evidence is that the sale price of the Morrises' house was far in excess of 50% of its fair market value, Deutsche Bank is entitled to summary judgment on Plaintiff's claim for wrongful foreclosure.

### 3.  Trespass

Plaintiff alleges that Deutsche Bank trespassed when it wrongfully interfered with the Morrises' right of possession of their property by unlawfully foreclosing on their house and removing them from their home.[34]  "To recover damages for trespass to real property, a plaintiff must prove that (1) the plaintiff owns or has a lawful right to possess real property, (2) the defendant entered the plaintiff's land and the entry was physical,

---

[34] Document No. 1-37 at 20 of 25.

intentional, and voluntary, and (3) the defendant's trespass caused injury to the plaintiff."  Wilen v. Falkenstein, 191 S.W.3d 791, 798 (Tex. App.-Fort Worth 2006, pet. denied).

The uncontroverted summary judgment evidence is that the Morrises, while represented by counsel, agreed to a judgment of possession entitling Deutsche Bank to possess the property; a writ of possession was issued; and the Morrises then moved out of the house and, through counsel, gave their keys to Deutsche Bank.[35] Plaintiff nevertheless argues that "Plaintiff had legal possession of the home prior to foreclosure/eviction and is currently entitled to *possession* of the home."[36]  This argument is frivolous and contrary to the judicial admission Plaintiff's counsel made at the May 8, 2019 hearing on Deutsche Bank's motion to vacate the state court's interlocutory partial summary judgment on liability, when he conceded that Deutsche Bank is entitled to a writ of possession.[37]  It is also inconsistent with the state court judgment

---

[35] Document No. 61, exs. 11, 12; id., ex. 14 at 69:16-18.

[36] Document No. 63 at 13.

[37] Document No. 46 at 43:5-20 ("MR. LANE: Plaintiffs are not asking for possession of the property.  THE COURT: And so defendant then would be entitled to possession of the property, would it not? MR. LANE: In fact, I think they are in possession.  So if -- THE COURT: I know, but they're entitled.  They would be entitled to a writ of possession if there's any question about it.  MR. LANE: In fact, they've already received a writ of possession from the eviction --  THE COURT: So this judgment would be wrong then, wouldn't it?  MR. LANE: With respect to that simple provision, as to the defendant's not being entitled to a writ of possession, at this point in time they would be.").

dismissing the Morrises' claim for wrongful eviction, which they elected not to appeal. *See* <u>Morris v. Deutsche Bank Nat'l Tr. Co.</u>, 528 S.W.3d 187, 192 n.1 (Tex. App.-Houston [14th Dist.] 2017, no pet.) ("The Morrises do not appeal the dismissal of their claims for slander of title/wrongful eviction and broken chain of title.").

Regardless, Plaintiff's argument that he, and not Deutsche Bank, is the rightful possessor of the foreclosed property depends on his mistaken contention that equitable subrogation did not apply and that Deutsche Bank therefore had no authority to foreclose. As observed above, Deutsche Bank has been the lawful owner of the property since the substitute trustee's sale. Deutsche Bank is therefore entitled to summary judgment on Plaintiff's claim for trespass.

4. Conversion of Personal Property[38]

To prevail on a claim for conversion of personal property under Texas law, Plaintiff must prove that "(1) plaintiff owned, had legal possession of, or was entitled to possession of the property; (2) defendant assumed and exercised dominion and control over the property in an unlawful and unauthorized manner, to the exclusion of and inconsistent with plaintiff's rights;

---

[38] Plaintiff titles his cause of action "Conversion of Personal Property and Theft," but he does not allege a claim for theft separate from his common-law conversion claim.

(3) plaintiff made a demand for the property; and (4) defendant refused to return the property." Tow v. Amegy Bank N.A., 976 F. Supp. 2d 889, 907 (S.D. Tex. 2013) (Rosenthal, J.) (quoting Ojeda v. Wal-Mart Stores, Inc., 956 S.W.2d 704, 707 (Tex. App.-San Antonio 1997, pet. denied)).

Plaintiff's conversion claim alleges that "[b]ecause Defendants never obtained title to the home, Defendants have been in wrongful possession of the home since the foreclosure" and that "Defendants took wrongful possession of Plaintiff's personal property that remained in the home and committed conversion of Plaintiff's personal property."[39] The flawed premise of Plaintiff's allegation--that Deutsche Bank's possession of the house was wrongful--fails for the reasons already discussed above. The Morrises left some personal property in the house when they moved out (seven months after the house was sold and the Morrises received a Notice to Vacate), but Plaintiff produces no summary judgment evidence that he ever demanded its return or that Deutsche Bank refused to return it. Plaintiff's own deposition testimony is that he never personally contacted Deutsche Bank to ask about the personal property or requested its return.[40] Moreover, Plaintiff testified that he did not know what, if anything, Mattie Morris may have done to recover the personal property and, likewise, he was

---

[39] Document No. 1-37 at 20 of 25 to 21 of 25.

[40] Document No. 61, ex. 15 at 146:9-15, 147:6-14.

18

unaware of any efforts made by anyone related to Plaintiff to obtain the return of the Morrises' personal property.[41]

Plaintiff cites Texas cases for the proposition that demand and refusal are not required for a conversion claim where demand would have been useless or where the possessor's acts amount to a clear repudiation of the plaintiff's legal rights. *E.g.*, <u>Bures v. First Nat. Bank, Port Lavaca</u>, 806 S.W.2d 935, 938 (Tex. App.-Corpus Christi 1991, no writ); <u>McVea v. Verkins</u>, 587 S.W.2d 526, 531 (Tex. Civ. App.-Corpus Christi 1979, no writ); <u>Loomis v. Sharp</u>, 519 S.W.2d 955, 958 (Tex. Civ. App.-Texarkana 1975, writ dism'd). None of these cases involved facts remotely similar to those here. *See, e.g.*, <u>McVea</u>, 587 S.W.2d at 534 ("The defendants made no attempt to stop the timber-cutting by resort to the courts. Instead, Verkins took matters into his own hands and acted as judge, jury and executioner. . . . The act of changing the locks and the act of ordering McVea not to go on the leased premises were distinct acts of dominion wrongfully asserted over McVea's personal property."). Plaintiff, who was represented by counsel, was evicted pursuant to an agreed court order for possession seven months after receiving a Notice to Vacate. Plaintiff has presented no summary judgment evidence that a request for him for access to obtain his personal property would have been futile.

---

[41] <u>Id.</u>, ex. 15 at 147:21-148:18.

In sum, Plaintiff has not produced summary judgment evidence that Deutsche Bank unlawfully assumed control of the personal property that the Morrises left in the house when they turned over its possession to Deutsche Bank, that Plaintiff demanded return of his personal property, or that Deutsche Bank refused to return it. Because Plaintiff has not raised a genuine issue of material fact on essential elements to prove conversion, Deutsche Bank is entitled to summary judgment on Plaintiff's conversion claim.

5.   Declaratory Judgment

Plaintiff seeks a declaratory judgment "that the foreclosure sale of Plaintiff's home was void and be rescinded" and "that Defendants had no authority to force sale of Plaintiff's homestead, given that they had no lien that fell into any category under § 50(a) of the Texas Constitution."[42]  As explained above, Deutsche Bank under the doctrine of equitable subrogation stood in the shoes of the prior lienholder and had authority to foreclose on the Morrises' house, and the foreclosure sale was not void notwithstanding the constitutional invalidity of the 2006 lien. Zepeda, 601 S.W.3d at 766.  Deutsche Bank is therefore entitled to summary judgment denying Plaintiff's request for declaratory judgment.

---

[42] Document No. 1-37 at 21 of 25.

6.   Attorney's Fees

Because Deutsche Bank is entitled to summary judgment on all of Plaintiff's substantive claims, it is also entitled to summary judgment denying Plaintiff's claim for attorney's fees incurred in bringing those meritless claims.  *See* <u>Green Int'l, Inc. v. Solis</u>, 951 S.W.2d 384, 390 (Tex. 1997) ("To recover attorney's fees under Section 38.001, a party must (1) prevail on a cause of action for which attorney's fees are recoverable, and (2) recover damages."); *see also* <u>Utica Lloyd's of Texas v. Mitchell</u>, 138 F.3d 208, 210 (5th Cir. 1998) ("[A] party may not rely on the Texas DJA to authorize attorney's fees in a diversity case because the statute is not substantive law.").

C.   <u>Deutsche Bank's Counterclaims</u>

Deutsche Bank alleges four causes of action in its Original Counterclaim:  (1) contractual subrogation, (2) equitable subroga-tion, (3) foreclosure of equitably or contractually subrogated lien, and (4) writ of possession.[43] Deutsche Bank concedes that its claim for contractual subrogation is barred, and Plaintiff is entitled to summary judgment on that claim.  Deutsche Bank's claims for foreclosure and for a writ of possession are alleged only in the event that the Court should hold that the substitute trustee's

---

[43] Document No. 1-32 at 2 of 24 to 3 of 24.

sale must be set aside, which is not the case, and these claims are therefore dismissed as moot.  Plaintiff's sole argument for summary judgment on Deutsche Bank's counterclaim for equitable subrogation is that Deutsche Bank is not entitled to equitable subrogation.  Because that argument fails for the reasons discussed above in Part III.A, Plaintiff's motion for summary judgment on Deutsche Bank's claim for equitable subrogation is DENIED.

For the reasons set forth in this Memorandum Deutsche Bank prevails on its claim for equitable subrogation validating its foreclosure sale of the property located at 621 Double Ridge Crossing, Missouri City, Fort Bend County, Texas 77451, and its purchase of title to the property as the highest bidder at the substitute trustee's sale conducted on August 7, 2012.  Deutsche Bank has not, however, in its summary judgment briefing and summary judgment evidence established as a matter of law entitlement to its unquantified claims pled in its counterclaim for interest, advances on ad valorem taxes, insurance, and "other unrecovered advances" made since January 30, 2006.[44]  These remain for trial.

## IV. <u>Order</u>

For the foregoing reasons, it is

ORDERED that Defendant Deutsche Bank's Motion for Summary Judgment (Document No. 61) is GRANTED as to Plaintiff Joseph

---

[44] Document No. 1-32 at 2 of 24.

22

Morris's claims, and Plaintiff's claims are DISMISSED on the merits with prejudice.  It is further

ORDERED that Plaintiff's Motion for Summary Judgment (Document No. 63) is GRANTED IN PART as to Defendant's counterclaim for contractual subrogation, which claim is DISMISSED on the merits with prejudice.  Plaintiff's motion is otherwise DENIED. Defendant's counterclaims for foreclosure and for a writ of possession are DISMISSED without prejudice as moot.

Defendant's counterclaim for additional relief under the doctrine of equitable subrogation--beyond a declaration of the validity of the substitute trustee's August 7, 2012 foreclosure sale at which Deutsche Bank acquired title to the mortgaged property as the highest bidder--remains for further adjudication.

The Clerk will enter this Order, providing a correct copy to all counsel of record.

SIGNED in Houston, Texas, on this 3rd day of February, 2021.


EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE